```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: August 31, 2021
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TYRONE H. MASSEY,

                  **Plaintiff,**

-against-

CAPTAIN MORGAN,

                  **Defendant.**

18-CV-3994 (ALC) (KHP)

**MEMORANDUM AND ORDER**

---

**ANDREW L. CARTER, JR., District Judge:**

Pending before the Court are Plaintiff's and Defendant's motions for summary judgment. ECF Nos. 67, 76. For the reasons that follow, Plaintiff's motion for summary judgment is denied, and Defendant's motion for summary judgment is granted.

## BACKGROUND

The facts are derived from Defendant's Rule 56.1 statement, Plaintiff's Rule 56.1 statement,[1] and the Parties' declarations and exhibits. The facts are considered in the light most favorable to the non-moving party.

---

[1] The Court notes that even "a pro se party's bald assertions unsupported by evidence are insufficient to overcome a motion for summary judgment." *Parker v. Fantasia*, 425 F. Supp. 3d 171, 183–84 (S.D.N.Y. 2019) (citation, alteration, and quotation marks omitted). Here, Plaintiff filed its 56.1 Statement, (Pl.'s 56.1). Defendant filed its 56.1 Statement in addition to a statement notifying Plaintiff of the potential consequences of not responding to the Motion, as required by Local Rule 56.2 for *pro se* litigants, (Not. to Pro se Litigant). Plaintiff submitted a statement in response, (see Pl.'s Opp.). The facts in Plaintiff's 56.1 Statement and opposition are not all supported by direct citations to admissible evidence. *See generally* Pl.'s 56.1 statement. "[W]here there are no citations or where the cited materials do not support the factual assertions in the statements, the Court is free to disregard the assertion." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (internal alterations omitted) (collecting cases); *see also Fiedler v. Incandela*, No. 14 CV 2572, 2016 WL 7406442, at *6 (E.D.N.Y. Dec. 6, 2016) ("The court need not consider as true any fact that is not supported by admissible evidence." (citing *Whitehurst v. 230 Fifth, Inc.*, 998 F. Supp. 2d 233, 260 (S.D.N.Y. 2014))); *Suares v. Cityscape Tours, Inc.*, No. 11 Civ. 5650, 2014 WL 969661, at *2 (S.D.N.Y. Mar. 12, 2014), *aff'd*, 603 Fed. Appx. 16 (2d Cir. 2015) (where plaintiff failed to provide citations to the record, the Court deemed defendants' 56.1 statement of material facts "admitted for purposes of the motion") (citing Local Rule 56.1). However, The Court has thoroughly reviewed the record, and to the extent that Plaintiff's facts as set forth in his 56.1 Statement and opposition are supported by the record, they have been considered.

On April 19, 2018, Plaintiff was a pre-trial detainee incarcerated at the Manhattan Detention Complex ("MDC") and housed in the enhanced segregated housing unit, Housing area 9 South.[2] Def.'s 56.1 Statement ¶ 25. That same day, the Housing Area Supervisor, Correction Captain Jossette Morgan, conducted tours of Housing Area 9 South. *Id.* at ¶ 28. That day, from 11 a.m. to 7 p.m., Correction Officer Cerrato was deployed to Housing Area 9 South to assist with securing inmate cells. *Id.* at ¶ 29. Around 12:30 p.m., Officer Cerrato observed Plaintiff set a small fire in his cell, and he immediately located a fire extinguisher and extinguished the fire. Pl.'s 56.1 Statement ¶ 1; Def.'s 56.1 Statement ¶¶ 32-33.[3] Officer Cerrato reported the incident to Captain Morgan around 1:00 p.m. *Id.* at ¶ 34. Afterwards, Captain Morgan responded and activated an institutional alarm and a medical emergency alarm for Plaintiff alerting medical personnel. *Id.* at ¶ 36. A probe team, which consists of a captain and five correction officers, was called to the housing area and responded around 1:05 p.m. *Id.* at ¶¶ 37-39, 42. When Captain Morgan arrived in Housing Area 9 South, the small fires had already been extinguished, and removal from Plaintiff's cell was not needed. *Id.* at ¶¶ 40-41. Captain Morgan left after the probe team arrived, and the probe team left around 1:15 p.m. *Id.* at ¶ 44.[4]

Captain Deborah Earle arrived at Housing Area 9 South with medical staff at 1:18 p.m. in response to the medical emergency activated for Plaintiff and another inmate. Def.'s 56.1 Statement ¶ 45. After medical staff left, Plaintiff again set multiple small fires, and the fires were extinguished by Officer Cerrato. *Id.* at ¶ 46. Officer Cerrato observed plaintiff before and after the

---

[2] Plaintiff is no longer incarcerated at MDC. Plaintiff is currently incarcerated at Rikers Island.
[3] The Court notes that Plaintiff's 56.1 Statement states that a fire incident occurred in his cell. Plaintiff does not admit to setting the fire. Pl.'s 56.1 Statement ¶ 1.
[4] The Court notes that Plaintiff alleges that Captain Morgan did not resolve the fire during her tour of duty despite being aware of the fire incident in Plaintiff's cell. Pl.'s 56.1 Statement ¶¶ 2-3. Plaintiff alleges that Captain Morgan was aware that Defendant required medical attention due to him inhaling smoke. *Id.* at ¶ 4. Plaintiff alleges that Captain Morgan was required to notify medical personnel, and Captain Morgan failed to notify medical personnel as required. *Id.* at ¶¶ 5-6. Plaintiff states that he did not receive medical attention during Captain Morgan's tour, and that medical personnel responded to another inmate approximately forty-eight minutes after the fire incident. *Id.* at ¶¶ 7-8.

fires and did not witness Plaintiff in any physical distress, and Plaintiff did not request medical attention from Officer Cerrato. *Id.* at ¶¶ 48-49. Captain Morgan conducted her last tour on Housing Area 9 South at 3:05 p.m., and Captain Morgan observed Plaintiff breathing normally, standing up in his cell, and he did not appear to be in any physical distress, physical, or otherwise. *Id.* at ¶¶ 50-51.

On April 19, 2018 at 3:30 p.m., Captain Morgan's tour of duty ended. Before leaving, Captain Morgan instructed Officer Cerrato to generate a Report and Notice of Infraction for the fires set by Plaintiff. Def.'s 56.1 Statement ¶¶ 52, 54. Plaintiff alleges that during Captain Morgan's tour of duty, he was not removed from the location of the fire and his cell was not searched, cleared, or decontaminated. Pl.'s 56.1 Statement ¶¶ 9, 11.

Officer Cerrato left Housing Area 9 South at around 4:10 p.m. Def.'s 56.1 Statement ¶ 56, and at that same time, Captain Erik Gonzalez's tour of Housing Area 9 South began. Captain Gonzalez did not observe Plaintiff to be in any distress, physical or otherwise. *Id.* at ¶ 57. From 3:55 p.m. to 8:30 p.m., the Correction staff conducted supervised tours of Housing Area 9 South every 30 minutes. *Id.* at ¶ 58. The Mental Health Clinician, Stanley Killian, noted that Plaintiff had "no complaints," "was well related," "appeared alert and responsive," "coping well," "goal directed," and "cooperative. *Id.* at ¶ 60.

Around 8:40 p.m., Captain Gonzalez was alerted that Plaintiff had set a small fire in his cell, and Captain Gonzalez activated an institutional alarm and a medical emergency alarm for Plaintiff alerting medical personnel. Def.'s 56.1 Statement ¶¶ 62-63. By the time Captain Gonzalez arrived in Housing Area 9 South, medical staff was already there, and Plaintiff was being seen by medical staff consisting of Dr. Eugenio Mateo, Registered Nurse Jeanne Israel, and Patient Care Associate Candice Davis. *Id.* at ¶ 66. The medical entry states that Plaintiff was found "slumped

3

on the floor on his left side," was "breathing spontaneously," had a "normal heart rate" and his lungs were "clear." Plaintiff's eyes and throat were also reported to be clear. *Id.* at ¶ 67. Plaintiff's medical history reflected that on April 19, 2018, Plaintiff's prescribed medications included albuterol sulfate (aerosol asthma pump), Qvar (maintenance asthma steroid pump), Keppra (anti-seizure medication), Zyprexa (antipsychotic medication), and an adult multi vitamin. *Id.* at ¶ 68. At 8:55 p.m., Plaintiff was escorted out of Housing Area 9 South by medical staff and taken to the MDC Clinic. *Id.* at ¶ 69.[5]

Plaintiff's medical treatment included Dr. Eugenio Mateo activating EMS and calling Urgi-Care for a consultation. Def.'s 56.1 Statement ¶ 71. Dr. Avi Trope was the Urgi care physician, and based on Dr. Mateo's medical examination, Dr. Mateo advised Dr. Trope that Plaintiff was clinically stable. *Id.* at ¶¶ 72-73. Based on Dr. Mateo's examination, Plaintiff did not have any medical symptoms that would indicate he was exposed to smoke or fire. *Id.* at ¶ 74. As Dr. Trope was not present for Dr. Mateo's evaluation, Dr. Trope transferred Plaintiff to Bellevue Hospital for continued monitoring. *Id.* at ¶¶ 76-77. There, Plaintiff was seen by Dr. Yamira Lopez-Ramos and Dr. Darien Sutton-Ramsey, and medical entries for April 19, 2018 reflect that Plaintiff sustained smoke inhalation; Plaintiff complained of intermittent wheezing, shortness of breath, difficulty breathing, was not in acute distress, and had no obvious signs of trauma or inhalation injury, and was prescribed and administered a nebulizer treatment. *Id.* at ¶¶ 78-79.

After returning to MDC the next morning, Plaintiff was seen by Physician Assistant Jean Grandoit and Dr. Zoey Thrill. Plaintiff reported no medial complaints to Physician Assistant

---

[5] Plaintiff states that he did not receive medical care until approximately 8:40 on April 19, 2018 after Captain Gonzalez activated a medical emergency alarm. Pl.'s 56.1 Statement ¶¶ 17, 19. Plaintiff alleges that he suffered injuries for that required medical care for days after the fire incident. *Id.* at ¶ 18. Plaintiff alleges that Defendants falsely claim that a medical emergency alarm was activated after he set another fire. Plaintiff alleges he did not set another fire. *Id.* at ¶ 26.

Grandoit; however, Dr. Zoey Thrill reported that Plaintiff "has used Albuterol +10 times without good relief of symptoms. Reports coughing up 'black stuff,' denies shortness of breath. Def.'s 56.1 Statement ¶¶ 80-82. As a result, Dr. Thrill ordered that Plaintiff be administered Albuterol Sulfate Nebulizer solution which was administered by LPN Sterling, and Plaintiff was prescribed a five-day treatment of prednisone for acute asthma. *Id.* at ¶¶ 83-85.

Plaintiff then refused to take medications on April 23, 2018 and April 26, 2018. Def.'s 56.1 Statement ¶¶ 86, 88. Plaintiff was seen by Edith Ogbenna, RNC, FNP, BC on April 26, 2018 regarding his asthma and reported that he was using his medication as directed. *Id.* at ¶ 90. Plaintiff's maintenance asthma steroid pump dosage was increased. *Id.* at ¶ 92. On May 4, 2018, Plaintiff again refused medical care for his asthma follow-up visit. *Id.* at ¶ 93.

## PROCEDURAL HISTORY

Plaintiff commenced this action on May 3, 2018. ECF No. 1. Fact discovery in this matter was scheduled to close on February 26, 2021. ECF No. 63. On December 15, 2020, Plaintiff moved for summary judgment. ECF No. 67. On February 5, 2021, Defendant cross moved for summary judgment. ECF No. 76. Defendant additionally provided Plaintiff with the requisite 56.2 notice to Pro Se litigants. ECF No. 84. Plaintiff opposed Defendant's motion on April 13, 2021, and Defendant replied on May 12, 2021. (ECF Nos. 96, 102.) The Court considers the motion fully briefed.

### I.  Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (noting that the summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether

5

it is so one-sided that one party must prevail as a matter of law"). A dispute of fact is "genuine" if the record evidence "is such that a reasonable jury could return a verdict for the nonmoving party." *See Anderson*, 477 U.S. at 248. Moreover, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citation omitted). In other words, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48 (emphases in original).

The moving party bears the initial burden of "establishing the absence of any genuine issue of material fact." *Zalaski v. Cty. of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010) (per curiam) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Once this initial burden is met, "[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (emphasis omitted) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). A mere "scintilla of evidence" in support of the nonmoving party is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (alteration in original) (internal quotation marks and citation omitted).

"When considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the nonmoving party, drawing all inferences in that party's favor." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citation omitted). In other words, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his [or her] favor." *Anderson*, 477 U.S. at 255. The Court does "not weigh evidence or assess the

credibility of witnesses," which "are matters for the jury." *Jeffreys*, 426 F.3d at 553–54 (internal quotation marks and citations omitted); *see also Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]"); *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996) ("Any weighing of the evidence is the prerogative of the finder of fact, not an exercise for the court on summary judgment.").

Finally, when considering a dispositive motion made by or against a *pro se* litigant, the Court is mindful that a *pro se* party's pleadings must be "liberally construed" in favor of that party and "are held 'to less stringent standards than formal pleadings drafted by lawyers.' " *Hughes v. Rowe*, 449 U.S. 5, 9–10 (1980) (per curiam) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). The Second Circuit "liberally construe[s] pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (internal quotation marks and citations omitted). Nevertheless, "[p]roceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions unsupported by evidence, are insufficient to overcome a motion for summary judgment." *Rodriguez v. Hahn*, 209 F. Supp. 2d 344, 348 (S.D.N.Y. 2002) (citation omitted).

### i. Plaintiff's Deliberate Indifference Claim

Plaintiff alleges that Captain Morgan was aware of the fire incident in his cell, knew that he required medical attention, and failed to resolve the incident or alert medical personnel as required. Pl.'s 56.1 Statement ¶¶ 5-6. Therefore, the Court shall construe Plaintiff's claim as a claim of deliberate indifference to a pretrial detainee's medical needs. Claims of deliberate indifference to a pretrial detainee's medical needs "are governed by the Due Process Clause of the Fourteenth

Amendment." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (internal citations omitted). Deliberate indifference claims are reviewed using a two-prong inquiry. Under the objective prong, a plaintiff must allege, "that the alleged deprivation [is] sufficiently serious in the sense that [it is] a condition of urgency, one that may produce death, degeneration, or extreme pain." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)).

Under the "mental element" prong of the deliberate indifference standard, a plaintiff must allege that the defendant "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care . . . even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35; *see also Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) ("A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998))).

In other words, a pretrial detainee "need not demonstrate subjective awareness on the part of the [defendant]." *Gleeson v. County of Nassau*, No. 15 CV 6487, 2019 WL 4754326, at *11 (E.D.N.Y. Sept. 30, 2019). "[R]ather than ask whether the charged official 'knew of and disregarded an excessive risk to inmate health or safety,' courts are to instead determine whether the official 'knew, or should have known' that his or her conduct 'posed an excessive risk to health or safety.'" *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 719 (S.D.N.Y. 2017) (quoting *Darnell*, 849 F.3d at 33, 35). However, mere negligence will not suffice; a pretrial detainee "must prove that an official acted intentionally or recklessly, and not merely negligently." *Darnell*, 849 F.3d at 36.

### A. Objective Prong

Plaintiff cannot meet the objective prong of the deliberate indifference inquiry. Under both the Eighth and Fourteenth Amendments, to establish an objective deprivation, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health[.]" *Ritter v. Montoya*, No. 20 CV 114, 2021 WL 230205, at *4 (S.D.N.Y. Jan. 22, 2021). Although Courts in this district have consistently held that conditions that expose inmates to unreasonable levels of smoke satisfy the objective prong, *see Benjamin v. Kerik,* No. 75 Civ. 3073, 1998 WL 799161, at *5 (S.D.N.Y. Nov. 13, 1998) ("fire safety protections must be afforded at a level that does not expose the plaintiffs to an unreasonable risk of serious damage to their future health."); *cf. Jones v. Goord,* 435 F. Supp. 2d 221, 249 (S.D.N.Y. 2006) ("Exposure to secondhand [cigarette] smoke can give rise to an Eighth Amendment violation.") (citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993)), the factual record before the Court does not support a finding that Plaintiff was exposed to unreasonable levels of smoke.

Here, it is undisputed that several small fires were started in Plaintiff's cell. While Plaintiff does not admit that he started the fires, the declarations and exhibits provided by Defendant support Defendant's assertion that the fires were started by Plaintiff. As to the first set of small fires, the fires were immediately extinguished, and Captain Morgan activated an institutional alarm and a medical emergency alarm. Def.'s 56.1 Statement ¶¶ 36, 40-41. Plaintiff then set more small fires in his cell, which were also immediately extinguished. Def.'s 56.1 Statement ¶ 46. Moreover, medical records reflect that Plaintiff had no symptoms that indicated that he was exposed to smoke or fire, and Plaintiff had no trauma or injury indicative of an inhalation injury. Def.'s 56.1 Statement ¶¶ 74, 78-79. Additionally, Plaintiff did not complain of any injury or request medical attention from the staff. The record before the Court does not reflect that Plaintiff's alleged

deprivation was "sufficiently serious in the sense that [it is] a condition of urgency, one that may produce death, degeneration, or extreme pain." *Hill*, 657 F.3d at 122.

Further, Plaintiff does not allege a serious delay in the provision of medical care, as he received medical treatment that same day. Indeed, Captain Deborah Earle arrived at Housing Area 9 South with medical staff at 1:18 p.m. in response to the medical emergency activated for Plaintiff and another inmate. Def.'s 56.1 Statement ¶ 45. Afterwards, Officer Cerrato observed plaintiff before and after the fires and did not witness Plaintiff in any physical distress, and Plaintiff did not request medical attention from Officer Cerrato. *Id.* at ¶¶ 48-49. Captain Morgan also observed Plaintiff breathing normally, standing up in his cell, and Plaintiff did not appear to be in any physical distress. *Id.* at ¶¶ 50-51.

However, after Captain Morgan's tour of duty ended, the record reflects that Plaintiff started more fires for which he subsequently received medical attention. The record does not support a delay that is sufficient to support a deliberate indifference claim when Plaintiff has pointed to no evidence demonstrating that his alleged injuries required any more immediate attention than what was provided by Captain Morgan. *See Watts v. N.Y.C. Police Dep't*, 100 F. Supp. 3d 314, 327–28 (S.D.N.Y. 2015) (one-day delay in bringing the plaintiff to hospital for treatment was insufficiently serious); *Fuentes v. Balcer*, No. 10 CV 684, 2013 WL 276679, at *8 (S.D.N.Y. Jan. 24, 2013) (finding that medical care was provided within approximately one hour and ten minutes and thus was within the category of "temporary delay" that courts have "generally recognized as insufficient to support a deliberate indifference claim" (citation and quotation marks omitted)); *Bradley v. Rell*, 703 F. Supp. 2d 109, 123 (N.D.N.Y. 2010) (granting in part summary judgment where pretrial detainee was taken by ambulance to the emergency room within four hours of sustaining injuries during an arrest); *Osuna v. City of New York*, No. 08 CV 4759, 2009

WL 2356424, at *5 (S.D.N.Y. July 30, 2009) (highlighting the undisputed evidence that the plaintiff was admitted to a hospital no later than 75 minutes after arrest).

Moreover, cases where delays of medical care have been held to satisfy the objective requirement have involved "either a needlessly prolonged delay or a delay that caused extreme pain or exacerbated a serious illness." *Leibovitz v. City of New York*, No. 14 Civ. 3297, 2015 WL 13746665, at *2 (S.D.N.Y. Dec. 18, 2015), report and recommendation adopted, No. 14 CV 3297, 2016 WL 1189526 (S.D.N.Y. Mar. 21, 2016); *see Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006) (five-month postponement of Hepatitis C treatment constituted a sufficiently serious delay); *Hathaway*, 37 F.3d at 67–68 (over two-year delay in treatment of broken pin in the plaintiff's hip that caused persistent pain satisfied the objective prong); *Hunter v. City of New York*, 35 F. Supp. 3d 310, 320 (E.D.N.Y. 2014) (five-day delay after an arrest in treating the plaintiff's fractured rib constituted a serious medical condition).

B. *Mens Rea*

Plaintiff fails to demonstrate any evidence regarding the *mens rea* prong, which requires that Captain Morgan "knew that failing to provide the complained of medical treatment would pose a substantial risk to [Plaintiff's] health or . . . should have known that failing to provide the omitted medical treatment would pose a substantial risk to [Plaintiff's] health." *Charles v. Orange Cty.*, 925 F.3d 73, 87 (2d Cir. 2019) (emphasis omitted).

Although Plaintiff suggests that Captain Morgan knew he required medical attention for smoke inhalation, the record shows no excessive risk of which Captain Morgan was aware, or should have been aware, and further demonstrates that Plaintiff received medical treatment after starting subsequent fires after Captain Morgan's tour of duty ended. Plaintiff provides no evidence that Captain Morgan intentionally deprived him of adequate medical care. In fact, the record

demonstrates that Captain Morgan responded to the fires set by Plaintiff by activating an institutional alarm and medical emergency alarm, and Captain Morgan and Officer Cerrato continued to monitor Plaintiff for any injuries. *See Williams v. Sykes*, No. 17 CV 990, 2019 WL 2374116, at *5 (N.D.N.Y. May 10, 2019), report and recommendation adopted, 2019 WL 2369882 (N.D.N.Y. June 5, 2019) (granting summary judgment where there was "simply no evidence that [defendant] intentionally deprived plaintiff of adequate medical care," nor evidence supporting a finding that the defendant "acted recklessly and 'knew or should have known' that her acts or omissions 'posed an excessive risk to [plaintiff's] health or safety.' ") (citations omitted); *Padilla v. Bobb-Diallo*, No. 17 CV 1150, 2020 WL 3038135, at *9 (N.D.N.Y. Jan. 13, 2020), report and recommendation adopted, 2020 WL 1025159 (N.D.N.Y. Mar. 3, 2020) (plaintiff did not meet the requirements of the *mens rea* prong where there was no evidence of 'conscious delay' or failure to treat an inmate's serious medical condition 'as punishment for other invalid reasons') (citations omitted).

Thus, the record before the Court fails to establish a claim for deliberate indifference to a pretrial detainee's medical needs. Defendant is entitled to judgment as a matter of law. Accordingly, Plaintiff's motion for summary judgment is denied, and Defendant's motion for summary judgment is granted.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment is denied, and Defendant's motion for summary judgment is granted. ECF Nos. 67, 76.

**SO ORDERED.**

**Dated:** August 31, 2021
New York, New York

**ANDREW L. CARTER, JR.**

                                        **United States District Judge**